UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:22-cr-00042-JAW-1 |
| | ) | |
| HENRY BRACKETT | ) | |
| | ) | |
| Defendant | ) | |

**ORDER ON UPWARD DEPARTURE BASED ON CRIMINAL HISTORY**

The Court concludes that United States Sentencing Guideline § 4A1.3(a)(2)(A) allows a sentencing court to consider prior uncounted convictions other than foreign and tribal convictions in determining whether to depart upward under § 4A1.3(a).

## I.    BACKGROUND

On May 11, 2022, Henry Brackett waived indictment and pleaded guilty to a one-count information, charging that he had possessed a stolen firearm in violation of 18 U.S.C. § 922(j).  *Information* (ECF No. 28); *Waiver of Indictment* (ECF No. 34); *Min. Entry* (ECF No. 35).  On June 30, 2022, the United States Probation Office (PO) filed its Presentence Investigation Report (PSR), which revealed that Mr. Brackett had an extensive criminal history but was a criminal history category IV under the United States Sentencing Guidelines (Guidelines).  *Presentence Investigation Report* (ECF No. 40) (PSR).  On October 12, 2022, at the outset of the aborted sentencing hearing, upon questioning from the Court, Mr. Brackett admitted that the contents of the PSR were correct.

In the PSR, the PO discussed the possibility of an upward departure based on Mr. Brackett's criminal history.  *PSR* ¶ 77.  The PSR revealed that Mr. Brackett by

the Court's count had twenty-three prior convictions from the age of seventeen onward. *Id.* ¶¶ 23-44. Yet only three of those prior convictions resulted in any criminal history points, resulting in an initial criminal history score of five. *Id.* ¶¶ 42, 44-45. However, as Mr. Brackett committed the instant offense while under a criminal justice sentence, two points were added, resulting in a criminal history category of IV. *Id.* ¶ 45. The main reason most of the earlier convictions did not count toward his criminal history category is that they took place too long ago. *Id.* ¶¶ 23-41, 43 (citing USSG § 4A1.2(e)(3) as the reason the convictions were not scored as part of the criminal history computation).

Mr. Brackett's uncounted prior convictions are manifestly extremely serious. He has four uncounted prior convictions for sexual assault: 1) at age seventeen, he committed his first sexual assault in the first degree and was sentenced to one year incarceration suspended after ninety days with two years of probation, *id.* ¶ 24, 2) at age twenty-three, he committed his second sexual assault in the first degree and was sentenced to three years of incarceration suspended after transitional supervision, *id.* ¶ 37, 3) also at age twenty-three, he committed his third sexual assault, this time in the third degree, and was sentenced to two years of incarceration, *id.* ¶ 38, and 4) at age twenty-six, he committed his fourth sexual assault, this time in the first degree, and was sentenced to twelve years of incarceration with execution stayed after six years and five years of probation. *Id.* ¶ 40. The PSR has no description of the first and third sexual assaults in 1978 and 1985. *Id.* ¶¶ 24, 38.

But it does for the second and fourth sexual assaults in 1984 and 1988. In 1984, while an inmate in the Montville Correctional Center, Mr. Brackett entered a sleeping inmate's cell, began to subject the victim to anal intercourse, and when the inmate resisted, Mr. Brackett pulled the victim's hair, put his hand over his mouth, and told him that if he called the corrections officer, he would break his neck. *Id.* ¶ 37. In 1988, Mr. Brackett approached a female at a tavern, tapped her on the shoulder and told her that the cousin of her ex-boyfriend was outside and wanted to talk to her. *Id.* ¶ 40. When the woman came outside, Mr. Brackett grabbed her by the arm, pulled her into a wooded area nearby, took out a knife and held it to her throat, and sexually assaulted her vaginally and orally. *Id.* After the assault, he opened her pocketbook and when he did not find enough money, he struck her. *Id.* In addition to his sexual assaults, his uncounted criminal history includes six convictions for larceny, *id.* ¶¶ 23, 25, 26, 27, 32, 35, three for burglary, *id.* ¶¶ 23, 27, 28, one assault, *id.* ¶ 30, one escape, *id.* ¶ 39, and one possession of a weapon. *Id.* ¶ 41.

Finally, the primary reason these prior convictions did not count is that on September 19, 1994, Mr. Brackett was arrested for and later sentenced to a long-term period of incarceration for his fifth conviction for sexual assault, this one in the first degree. *Id.* ¶ 42. The description in the PSR of this 1994 state offense is chilling. In 1994, Mr. Brackett met a female victim in front of a café, spoke briefly with her, and the woman walked away. *Id.* About twenty to thirty minutes later, Mr. Brackett drove alongside the victim and asked her if she knew where he could get some rocks

(crack cocaine).  *Id.*  She said, "yes," and got in Mr. Brackett's car.  *Id.*  He drove her to a state park, struck her on the head, held a knife to the victim's throat, and told her that she better listen and follow his instructions, or he would kill her.  *Id.*  Mr. Brackett then forced her to take her clothes off, and to perform oral sex on him.  *Id.* When she tried to flee, he tackled her and broke her collarbone.  *Id.*  Mr. Brackett got down on the ground and beat her, and when she started to scream, he choked her, saying that he would kill her if she did not stop.  *Id.*  Mr. Brackett then performed vaginal sex on the victim.  *Id.*  Mr. Brackett then drove off, leaving the victim in the park.  *Id.*

This time the state court in Connecticut imposed a heavy sentence: for kidnapping in the first degree, twenty-five years of incarceration, execution suspended after ten years, and five years of probation, and for sexual assault in the first degree, fourteen consecutive years of incarceration.  *Id.*  Although sentenced in 1995, Mr. Brackett was not released from incarceration until March 30, 2014, and he quickly began to violate the terms of his probation, resulting in multiple violations of probation, periods of incarceration, and reviolation.  *Id.*  When Mr. Brackett was arrested in the state of Maine for the instant offense, he had absconded from Connecticut parole and there was an outstanding parole warrant against him.  *Id.* Because of the length of his incarceration for his 1994 sexual assault, most of Mr. Brackett's prior conviction history had timed out of consideration in calculating his criminal history category for this offense.

On August 11, 2022, the Court held a presentence conference, and at the conference, the Court alerted counsel that it was considering departing upward under the United States Sentencing Guidelines to take into account Mr. Brackett's uncounted criminal history. *Min. Entry* (ECF No. 43). After the conference, the Government filed a sentencing memorandum, urging the Court to depart upward from criminal history category IV to criminal history category VI. *See Gov't's Sentencing Mem.* at 1-5 (ECF No. 48).

At the sentencing hearing, the Court discussed with Government and defense counsel the proper application of United States Sentencing Guideline (USSG) § 4A1.3(a), which addresses upward departures in cases where a defendant's criminal history category "substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." U.S.S.G. § 4A1.3(a)(1). Specifically, the Court focused on the types of information the Guidelines say a court may consider in evaluating whether an upward departure is warranted. *See* U.S.S.G. § 4A1.3(a)(2)(A-E).

It quickly became apparent that counsel disagreed about how to apply USSG § 4A1.3(a)(2)(A), which reads:

> The information described in subsection (a)(1) may include information concerning the following: (A) Prior sentence(s) not used in computing the criminal history category (*e.g.* sentences for foreign and tribal convictions).

The Court and the prosecutor read this provision as allowing the Court to consider Mr. Brackett's convictions that did not count for purposes of criminal history scoring. Noting that § 4A1.3(a)(2)(A) referred to sentences for foreign and tribal convictions,

defense counsel argued that this section did not apply to Mr. Brackett because he had no foreign or tribal convictions.

Whether Mr. Brackett is a criminal history category IV, V or VI matters for purposes of his guideline sentence range.  The PO calculated Mr. Brackett's total offense level as 23.  If Mr. Brackett is a criminal history IV, his guideline sentence range is 70 to 87 months; if V, the range is 84 to 105 months, and if VI, 92 to 115 months.  Although defense counsel conceded that the Court could vary upward due to Mr. Brackett's criminal history when applying the factors under 18 U.S.C. § 3553(a), the Court considered it important to make the correct guideline calculation because "judges must take the guidelines 'into account when sentencing.'"  *United States v. Flores-González*, 34 F.4th 103, 112 (1st Cir. 2022) (quoting *United States v. Booker*, 543 U.S. 220, 264 (2005)).  Furthermore, as the First Circuit has written, "[t]he Supreme Court has left no doubt that a properly calculated guideline range is the starting point for most sentences imposed . . . under the advisory sentencing guidelines."  *United States v. Patch*, 9 F.4th 43, 48 (1st Cir. 2021) (citing *Molina-Martinez v. United States*, 578 U.S. 189, 198 (2016).

Thus, the Court concluded that it had an obligation to correctly calculate Mr. Brackett's guideline sentence range as the starting point for Mr. Brackett's sentence, and the Court ordered briefing, continuing Mr. Brackett's sentencing hearing to allow consideration of the research and arguments of counsel.  On October 18, 2022, the Government filed its memorandum and on October 20, 2022, Mr. Brackett filed his. *Gov't's Sentencing Mem.* (ECF No. 48); *Defense Sentencing Resp. Mem.* (ECF No. 49).

## II.    DISCUSSION

The Guidelines fix a defendant's criminal history category by scoring his or her prior convictions, typically in terms of their seriousness, resulting in criminal history categories from I to VI.  USSG §§ 4A1.1, 4A1.2.  The Guidelines usually count only relatively recent convictions, within fifteen or ten years of the commission of the instant offense, depending on the seriousness of the prior crime.  USSG § 4A1.2(e)(1), (2).  The Guidelines have built in some discretion in arriving at the criminal history category for individuals whose criminal history underrepresents or overrepresents the seriousness of their prior conduct or the likelihood that the defendant will commit other crimes.  USSG § 4A1.3.

To assist in determining whether to depart upward, downward, or not at all, § 4A1.3 sets forth general standards.  For upward departures, § 4A1.3(a)(1) states that "[i]f reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, an upward departure may be warranted."  Section 4A1.3(a)(2) lists the "types of information" that may form the basis for upward departure, including under subsection A, "[p]rior sentence(s) not used in computing the criminal history category (*e.g.* sentences for foreign and tribal convictions)."  It is the meaning of this provision that this order addresses.

Before turning to § 4A1.3(a)(2), another Guideline provision sheds light on this issue: USSG § 4A1.2.  In application note 8, addressing the time limits for scoring prior convictions, the Guidelines state:

7

8. **Applicable Time Period —** Section 4A1.2(d)(2) and (e) establishes the time period within which prior sentences are counted . . . If the court finds that a sentence imposed outside this time period is evidence of similar, or serious dissimilar, criminal conduct, the court may consider this information in determining whether an upward departure is warranted under § 4A1.3 (Departures Based on Inadequacy of Criminal History Category (Policy Statement)).

USSG § 4A1.2, app. note 8.

The First Circuit addressed upward departures under the Guidelines in *United States v. Aymelek*, 926 F.2d 64 (1st Cir. 1991). As here, the defendant in *Aymelek* had multiple convictions that were too old and ineligible "for use in tabulating his criminal history score because they occurred more than ten years before the offense of conviction." *Id.* at 72. Acknowledging that even though such older convictions are usually not counted for criminal history, the First Circuit observed that they "may, however, be used in other ways where appropriate circumstances are extant." *Id.* Noting that Mr. Aymelek's uncounted convictions included "assault with intent to rob, unlawful possession of a firearm after a felony conviction, [and] unlawful sale of a firearm," the First Circuit ruled that "in light of the convictions' nature," the district judge could consider them in the departure decision under § 4A1.2 and § 4A1.3. *Id.* at 72-73.

The *Aymelek* Court interpreted the § 4A1.2, comment 8 language — "similar, or serious dissimilar, criminal conduct," — as allowing a sentencing judge to upward depart when an old conviction is similar to the instant offense or when ignoring the prior uncounted conviction, even though "not of the same genre as the offense of

conviction," would "not adequately reflect the gravity of defendant's past criminality or portrays a solid likelihood that defendant will commit other crimes." *Id.* at 72-73.

Since *Aymelek*, the First Circuit has reinforced its holding, namely that a sentencing court may consider outdated prior convictions if they are similar to the crime for which the defendant is being sentenced or, if dissimilar, they are serious crimes. *United States v. Amirault*, 224 F.3d 9, 13 (1st Cir. 2000) ("[E]ven though the sentencing guidelines generally restrict the use of dated convictions, they do allow the sentencing court leeway to consider such convictions if they provide evidence of similar, or serious dissimilar, criminal conduct") (internal quotation signs omitted); *United States v. Brewster*, 127 F.3d 22 (1st Cir. 1997) ("Section 4A1.3 specifically authorizes courts to consider prior uncounted convictions, *see* USSG § 4A1.3(a), and an upward departure is appropriate if convictions that were excluded from the [criminal history category] calculation for reasons such as remoteness, evince some significantly unusual penchant for serious criminality'" (quoting *Aymelek*, 926 F.2d at 73)); *United States v. Doe*, 18 F.3d 41, 45 (1st Cir. 1994) (observing that the guidelines "encourage" criminal history departures when appropriate); *United States v. Tilley*, 964 F.2d 66, 75 (1st Cir. 1992); *see United States v. Pratt*, 73 F.3d 450, 453 (1st Cir. 1990).

In *Tilley*, the First Circuit listed five factors a sentencing court should consider when deciding whether and the extent to depart upward in fixing a defendant's criminal history category: (1) the seriousness of the defendant's past criminal conduct, (2) the likelihood of recidivism, (3) prior similar adult conduct not resulting

9

in criminal convictions, and (4) previous lenient sentences for serious offenses, and (5) whether the sentence will have deterrence on future criminal conduct. 964 F.2d at 75 (citing *United States v. Joan*, 883 F.2d 491, 496 (6th Cir. 1989)).

Applying these principles to USSG § 4A1.3(a)(2)(A), the Court concludes that this provision is not limited to "sentences for foreign and tribal convictions" and includes sentences for other prior convictions not counted under USSG §§ 4A1.1 and 4A1.2. To conclude otherwise would strike the "*e.g.*" from § 4A1.3(a)(2)(A) ("*e.g.*, sentences for foreign and tribal convictions"). By using "*e.g.*," the Guidelines intended the two examples that follow to be nonexclusive. Second, if § 4A1.3(a)(2)(A) were interpreted as Mr. Brackett proposed at the sentencing hearing, the Guideline list of the types of information a court may consider would not include the factor that the guidelines in comment 8 of § 4A1.2 highlights and that the First Circuit in its opinions discusses as the most significant factor, namely whether a defendant's uncounted criminal history is similar to his current offense or, if dissimilar, is serious criminal conduct. Third, comment 8 of § 4A1.2 expressly refers to sentences imposed outside the time limits of the guidelines and says that a sentencing court "may consider this information in determining whether an upward departure is warranted under § 4A1.3." USSG § 4A1.2, comment 8. Given the contents of comment 8, the Court concludes that § 4A1.3(a)(2)(A) incorporates comment 8.

As a postscript, if § 4A1.3(a)(2)(A) includes only foreign and tribal convictions and not other uncounted convictions (which the Court doubts), First Circuit law and the parties concede that a sentencing court may consider a defendant's domestic prior

convictions not counted in the criminal history calculation. *Def.'s Mem.* at 3 ("In conclusion, while the examples given in § 4A1.3 do not specify convictions too old to score history points, the First Circuit has consistently ruled they may be considered by a sentencing court").

## III.   CONCLUSION

The Court will consider Henry Brackett's prior uncounted criminal convictions in determining whether to upwardly depart under United States Sentencing Guideline § 4A1.3.  As the Court had not completed its discussion with counsel concerning whether to depart upward in assigning Mr. Brackett's criminal history category under the guidelines, the Court will reconvene the sentencing hearing and resume the discussion where it broke off on October 12, 2022.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 28th day of October, 2022

11